## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

A.J.T., a minor child, by and through
her Parents, A.T. and G.T.,                          Civil File No. _____

        Plaintiffs,

                              **V E R I F I E D**
  v.                                                **C O M P L A I N T**

Osseo Area Schools, Independent
School District No. 279 and Osseo
School Board,

        Defendants.
_____

      Plaintiffs complain and allege as follows:

## I.

## PRELIMINARY STATEMENT

      1.     Plaintiff A.J.T. is fifteen years old, will begin the eighth grade in the fall, and lives with her Father and Mother in Maple Grove, Minnesota.

      2.     A.J.T. has disabilities that substantially limit a number of major life activities, requiring special education, related services, modifications and accommodations to access and participate in public school.

      3.     A.J.T. has attended the public schools in the Defendant Osseo Area Schools since October 21, 2015.

      4.     A.J.T. needs a full-time education like her peers but the District has refused to accommodate her disability-related need for an altered school day schedule starting at

noon.

5.      The District's refusals constitute discrimination on the basis of disability and have deprived A.J.T. of equal participation in, enjoyment and benefit of the activities, programs and services of the District.

6.      A.J.T. and her Parents have suffered injuries and damages from the District's discriminatory conduct for almost six years as well as incurring significant personal and financial costs to secure her educational rights guaranteed by a trio of federal laws the District has chronically and persistently violated.

7.      This action is commenced to secure their rights and relief for their injuries,

## II.

## JURISDICTION

8.      This court has jurisdiction over this action pursuant to 20 U.S.C. § 1415(i)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), 28 U.S.C. §§ 2201 and 2202, and declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202.

9.      Venue in this district is authorized by 28 U.S.C. § 1391(b) because Defendants conduct business in this district and all of the events described in this Complaint occurred in this district.

## III.

## PARTIES

10.     Plaintiff A.J.T. is a fifteen (15) year-old student and a citizen of the United

States.  Plaintiffs A.T. and G.T. are A.J.T.'s Parents and they are both citizens of the United States.

11.     Plaintiffs live in Maple Grove, Minnesota.

12.     A.J.T. is entitled to special education and related services on the basis of Lennox-Gastaut Syndrome, pursuant to federal special education laws.  She is a "child with a disability" as defined in the IDEA, 20 U.S.C. § 1401(3), based on a health impairment as defined in 34 C.F.R. § 300.8(b)(9) due to a chronic or acute health condition causing limited strength, vitality, or alertness that adversely affects educational performance.

13.     A.J.T. is also entitled to protection from discrimination pursuant to federal anti-discrimination laws.  She is a "qualified individual with a disability" as defined in Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its regulations due to a neurological condition that substantially limits a number of major life activities, including self-care, performing manual tasks, eating, walking, standing, reaching, lifting, bending, speaking, learning, reading, thinking, writing, communicating, interacting with others, and working.  34 C.F.R. § 104.3(j)(2)(ii).

14.     A.J.T. is also a "qualified individual with a disability" as defined in Title II of the Americans with Disabilities Act, , 42 U.S.C. § 12131(2) and its regulations, 28 C.F.R. § 35.104 on the same basis.

15.     A.J.T. is entitled to a free appropriate public education and non-discriminatory access to a public education under the comprehensive scheme of federal laws protecting those interests for students with disabilities - the IDEA, Section 504, and

the ADA.

16.     Defendant Osseo Area Schools, Independent School District No. 279 ("OAS"), is a governmental entity that administers the public schools within its boundaries under the management and control of the Osseo School Board.  OAS receives federal financial assistance, including federal funding that is distributed by the Minnesota Department of Education, for the specific purpose of providing special education services in a safe and non-discriminatory manner to children with disabilities.  OAS is an "independent school district" as defined by Minn. Stat.120A.05, Subd. 10, and a "local educational agency" within the meaning of 20 U.S.C. § 1401(19).

17.     OAS operates programs and activities through the receipt of federal financial assistance as defined in Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and is a "recipient" of federal funding as defined in 34 C.F.R. § 104.03(f).

18.     OAS is a "public entity" as defined in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1), and 28 C.F.R. § 35.104.

19.     Defendant Osseo School Board is responsible for the supervision of its public schools and, among other things, ensuring that all children with disabilities are located, identified, evaluated and provided special education and related services in compliance with federal and state law, and are protected from discrimination so that they can participate equally to all others in public school facilities and programs.

## V.

## FACTUAL ALLEGATIONS

20.    A.J.T. has been diagnosed with intractable epilepsy and a significant cognitive disability caused by Lennox-Gastaux syndrome, a condition characterized by recurrent and severe seizures, that makes learning and functioning in all areas very difficult for her despite a loving and supportive family, her good nature, her desire to learn and to please others, and her best efforts.

21.    A.J.T. is eligible for special education as a student with an Other Health Disability under state criteria and has always required maximum services and supports in order to learn and stay safe at school.

22.    A.J.T. is also protected against discrimination in public education on the basis of disability.

23.    A.J.T. has attended Defendant Osseo Area Schools since October 21, 2015, when she relocated to Minnesota with her family from Kentucky.

24.    Despite repeated parental requests the District has refused to provide A.J.T. with a full school day equal to the school day of her peers.

25.    A.J.T. has been under medical care and treatment since the age of six months to reduce and minimize seizure activity in order to maintain maximum functioning and to avoid further damage to her brain and body.

26.    A.J.T. and her Parents have established a care and treatment regimen under the direction and advice of her medical providers, particularly her treating neurologists, to maximize her sleep schedule in the morning in order to manage and minimize seizures

and medications.

27.     A.J.T.'s Parents and her treating neurologists have uniformly and consistently over the past twelve years determined that disrupting her sleep schedule in the morning causes an inevitable increase in seizure activity in the daytime.

28.     In the fall of 2009, A.J.T. participated in a hospital treatment program for children with multiple disabilities at the Aaron W. Perlman Center, Cincinnati Children's Hospital, but was discharged from that program based on a medical determination that her participation in the mornings put her at an unreasonable and unacceptable risk of increased seizure activity.

29.     Since then, A.J.T.'s Parents and her treating neurologists have uniformly and consistently determined that she is unable to attend school or any other activities until noon, extending her morning sleep regimen in order to decrease her seizure activity during the middle of the day between noon and 6:00 or 7:00 p.m. despite diligent and earnest medical care and treatment to alter her schedule.

30.     A.J.T. is extremely seizure heavy in the mornings when she wakes up and she is not available for instruction until noon.

31.     Attempts to alter A.J.T.'s sleep schedule have resulted in dangerous and dramatic increases in seizure activity.

32.     During times of heavy seizure activity A.J.T. cries, she is afraid, she needs to be comforted, she may fall or lose control of her body, and she may be in pain.

33.     A.J.T.'s Parents cannot subject her to more of that than is absolutely necessary and have refused the District's proposals to experiment with her sleep schedule

by starting her school day earlier than noon against medical advice, creating an unreasonable risk of harm and injury and an inevitable worsening of her problems.

34.     Since 2009, all of A.J.T.'s treating neurologists and pediatricians have documented that A.J.T. cannot safely attend school before noon due to morning seizure activity related to her chronic condition, that her school start time must be modified to begin at noon, and her Parents have provided this documentation to her schools.

35.     Five letters from three different prominent pediatric neurologists from July 1, 2015, to date are contained in the District's educational records for A.J.T., and included as exhibits at hearing, all advising that she cannot attend school before noon and requesting that her school schedule be adjusted but not shortened.

36.     Since 2009, A.J.T.'s absence from school attendance before noon has been excused without exception by her public schools despite compulsory attendance requirements, including by Defendant Osseo Area Schools.

37.     Since 2009, A.J.T. has been provided special education and related services on an altered schedule, starting at noon.

38.     Before moving to the Defendant District in the 2015-2016 school year, A.J.T. attended public school in Boone County, Kentucky.

39.     In the Boone County Public Schools A.J.T. received a full day of special education and related services from noon until 6:00 p.m., mostly in school but supplemented with some in-home instruction, in order to ensure she received a safe, appropriate and full public education equal to her peers.

40.     In Kentucky, A.J.T. was provided the same number of hours as a full

school day and the same number of hours her peers were provided.

41.    A.J.T. made progress in learning, communicating, and socializing during her full school-day schedule in Kentucky while remaining safe and appropriately treated.

42.    During instruction received at home between 4:00 and 6:00 p.m., both in Kentucky and when provided privately by her Parents in Minnesota, A.J.T. made progress, improving her independence, communication and functional skills without any medical complications or negative effects, staying on task and with good stamina.

43.    Dr. Joe Reichle, renowned expert in language and communication disorders, evaluated A.J.T. twice and established that A.J.T. does not learn as efficiently as a typical learner because her health condition impairs her learning and she does not learn well vicariously, so she can use all the time she can get to learn.

44.    Dr. Reichle testified that A.J.T. is clearly way behind her peers in learning the most basic and important communication skills and is she is falling further behind every day in terms of rate of acquisition' "she can use all the available hours that she can get where she's motivated to learn."

45.    District special education teachers working with A.J.T. over the past five years agreed that she would benefit from a full school day but were never consulted about the decision to shorten her school day.

46.    Dr. Galen Breningstall, renowned expert in pediatric neurology and A.J.T.'s current treating neurologist, established that "the more instruction time [A.J.T.] has the better it is for her."

47.    Before deciding to move to the Defendant School District her Parents

communicated with District special education administrators and members of A.J.T.'s IEP Team, provided information about her disabilities and needs including her Kentucky IEP, and requested continued full-time instruction on an altered schedule.

48.     During discussions with the District in August and September, District special education officials assured A.J.T.'s Parents that the District would continue to implement the Kentucky IEP schedule A.J.T. needed.

49.     No additional medical or educational records were requested by the District.

50.     On October 11, 2015, District special education administrator Amy Stafford announced at an IEP Team meeting that the District would not implement the Kentucky IEP schedule A.J.T. needed on the basis that "we don't provide both homebound and school support (modified)."

51.     This decision was made by District special education administrators unrelated to any evaluation or documentation of A.J.T.'s individual needs, before any District staff had met or worked with A.J.T., without the input of anyone who had actually worked with A.J.T. including teachers, parents or medical providers, and outside of the IEP Team process.

52.     This decision was a significant change in A.J.T.'s special education placement and was not informed or justified by any District re-evaulation.

53.     A.J.T.'s Parents immediately objected on the basis that the District's decision discriminated against their daughter on the basis of disability.

54.     A.J.T. began attending school in the Defendant School District on October

21, 2015, as her family had already moved into the District in reliance on the District's promises.

55.     Immediately and throughout her education in the District, A.J.T.'s Parents continued to request a full school day through a variety of means, including instruction at home by non-licensed but appropriately supervised staff.

56.     For more than five years her Parents participated in many, many meetings with her IEP Team and various District officials up to and including its highest special education administrator, Kate Emmons, its Special Education Director, to ask that A.J.T. receive a full day of school starting at noon.

57.     Director Emmons told A.J.T.'s Parents to hire a personal care assistant instead of the District providing an educator after regular school hours, reflecting stereotyped misperceptions about A.J.T. as child with disabilities only in need of personal care rather than as a learner in need of education.

58.     The District agreed A.J.T. should have a full day of school but only if she could attend school on the standard school-day schedule, contrary to medical advice, the unreasonable risk of harm and injury that would be created, and without teacher or evaluation support.

59.     For more than five years District administrators decided and declared that A.J.T. could not have a full school day starting at noon, citing shifting excuses unrelated to her medical and educational needs, her IEP Team's determination, or the full school day provided to her peers.

60.     For more than five years A.J.T. was provided a shortened school day by

District administrative fiat without the input of anyone who worked directly with her, including her Parents, her teachers, or her medical providers.

61.     Joy Fredrickson, District special education administrator, dictated the District's position at IEP Team meetings, and the opinions of teachers and Parents about A.J.T.'s need for a full school day were not even considered.

62.     Over the past five years her Parents have continued to request a full day of school on an altered schedule, have participated in mediation, conciliation conferences, and other informal dispute resolution processes, and have worked diligently to promote cooperation with the District and avoid litigation.

63.     Yet, A.J.T. has received only four and a quarter hours of education daily when her peers receive six and a half hours, or a school day 65% of the standard school day in the District, causing her to receive 405 less hours of instruction each year than her peers receive..

64.     Over the past five years her Parents have had to resist multiple efforts by the District to *shorten* her already truncated school day further, including reducing her day from four and a quarter to two hours and forty minutes daily when matriculating to the middle school in 2019 to match the earlier end of the regular school day.

65.     A.J.T. and her Parents even had to resist and defend the District's baseless administrative hearing in 2019 that sought to shorten her school day below the already shortened schedule, resulting in an agreement to provide an independent educational evaluation and dismissal.

66.     At no time has the District ever established that A.J.T. needs a shortened

school day, the only legitimate reason to provide one.

67.     All of the District's evaluations of and IEPs for A.J.T. establish that she requires significant and intensive educational efforts and services to make meaningful progress.

68.     On October 16, 2015, District administrators decided "state law does not mandate this support from the school district."

69.     On March 18, 2016, District administrators decided A.J.T. should come to school before noon as her medical needs allowed and her IEP could be delivered with part-time attendance.

70.     On June 6, 2016, District administrators decided A.J.T. could not have a full day of school on an altered schedule "due to the precedent it would start. [sic] For Osseo School District and other districts across the area."

71.     On March 26, 2018, District administrators decided after-hours instruction would not provide "continuity in environment" or "access to instructional materials and same aged peers", and did not coincide with the school nurse regular schedule.

72.     On March 26, 2018, District administrators decided after-hours instruction at home was too restrictive, limited access to instructional materials and assistive technology, and it had not evaluated A.J.T. to document data of her need for a full day of school.

73.     On April 2, 2018, District administrators decided A.J.T. can attend school in the morning when her medical condition changes.

74.     On June 14, 2018, District administrators decided that school nurse could

support attendance before noon with more access to peers.

75.     On September 30, 2019, District administrators decided that a special education teacher should assess A.J.T.'s ability to access instruction at home before noon, and should consult with her neurologist to compare morning and afternoon seizure activity.

76.     On July 17, 2020, and August 31, 2020, District administrators decided that A.J.T.'s typical seizure pattern requires services from 12:00 noon to 4:15 p.m.

77.     The independent educational evaluation performed by Dr. Reichle in 2019 concluded that A.J.T. had a great number of unmet needs for improved language and communication services as well as augmentative communication technology, and recommended significantly increased goals, objectives and services, as well as a full day of instruction between noon and 6:00 p.m. because "it is very important that she receives as much time as possible for instruction during her alert hours."

78.     Dr. Reichle's recommendations to improve A.J.T.'s IEP were not implemented because her part-time school schedule prevented full implementation.

79.     Dr. Reichle's recommendation to use eye gaze technology with a speech generating device was never tried, through available in the District, even though "[h]er communication future lies in augmentative communication applications" and "[i]f it was successful it would change her life dramatically."

80.     A device that provided eye gaze technology with a speech generating feature was procured by her Parents and given to the District to trial in the fall of 2017 that was never once turned on.

81.     The parties agreed in a conciliation conference on August 31, 2020, that A.J.T.'s IEP would be amended to reflect that annual medical documentation would determine her hours of instruction.

82.     After that agreement additional medical documentation was provided from Dr. Breningstall that determined A.J.T.'s hours of instruction should be from noon to 6:00 p.m., but the District ignored it and disregarded its previous agreement.

83.     Had A.J.T. been provided a full school day over the past five years she would have gained greater communication, social and functional skills rather than falling further and further behind her peers.

84.     Improved communication, social and functional skills are critical to the trajectory of A.J.T.'s development, including her independence, health, safety, satisfaction, dignity, relationships, self-esteem, social status, enjoyment and productivity.

85.     District special education administrators knew or should have known that decisions to shorten the school day of a student with a disability must be based on evaluation data, the student's individual needs, and Team decision-making.

86.     District special education administrators knew or should have known that shortening a student's school day without basis in a student's individual needs is substantially likely to result in violation of federally protected rights.

87.     District special education administrators knew or should have known that reasonable accommodations to the standard school day must be provided in order to ensure equal access to school for students with disabilities.

88.     The District, through its special education administrators, has acted with

bad faith, gross misjudgment, or deliberate indifference to A.J.T.'s rights to an education equal to her peers in compliance with principles of due process embedded in federal law.

89.     District special education administrators decided that A.J.T. could not have a full school day on the basis of a mistaken belief that she is too disabled to deserve a full day of school.

90.     District special education administrators made false promises to A.J.T.'s Parents that went unfulfilled, did not respond truthfully over five years to repeated parental requests for reasonable accommodations, refused to provide her a full school day despite evidence of insufficient progress with a shortened day, ignored the opinions of her teachers, her Parents and her physicians, and would not take appropriate action to protect A.J.T.'s educational interests, but instead consistently refused to provide a full school day and repeatedly proposed to shorten her school day further.

91.     District special education administrators wrongly exalted nominal cost savings over A.J.T.'s needs and her right to a full school day equal to the full school day of her peers albeit on an altered schedule.

92.     The District, through its special education administrators, acted deliberately and intentionally on the basis of stereotypes and misperceptions about the nature and severity of A.J.T.'s disability through exclusion, denial of benefits, refusal to provide reasonable accommodations and discrimination.

93.     Upon information and belief, the District's policies or practices of refusing to provide reasonable accommodations to the standard school day schedule is more likely to injure students with disabilities who need them most.

94.     The District provides tutoring at school buildings, homes and various other locations as well as a host of extracurricular and nonacademic activities after regular school hours to other students.

95.     A.J.T. and her Parents exhausted the administrative procedures and relief available under the Individuals with Disabilities Education Act ("IDEA") for the denial of a free appropriate public education, resulting in an order dated April 21, 2021 for an IEP that provides a full-day of school starting at noon and eye gaze technology with a speech generating device, as well as compensatory education services.

96.     The relief obtained through the IDEA's administrative hearing is insufficient to ensure her permanent equality of access to public education and to address and resolve all of A.J.T.'s injuries caused by the District's disability discrimination.

97.     The administrative hearing decision has not yet been implemented by the District, requiring a complaint to the Minnesota Department of Education on June 9, 2021 for enforcement that is pending.

98.     The Complaint and Request for Hearing raised claims for relief from violation of the IDEA, as well as Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

99.     A.J.T. and her Parents are entitled to additional relief from the District's discrimination on the basis of disability that should now be awarded.

100.    Upon information and belief the District has appealed the IDEA administrative hearing decision by filing a complaint in this Court on June 21, 2021 in Case No. 21-CV-1453 (MJD/DTS) that has not yet been served though Plaintiffs have

agreed to waive service.

# VI.

## CLAIMS FOR RELIEF
## COUNT I

### Violations of the Individuals with Disabilities Education Act

101.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

102.    The District violated significant procedural and substantive requirements of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* resulting in an administrative proceeding that provided limited relief for the denial of a free appropriate public education to A.J.T. over the past two years.

103.    The limited IDEA-related relief is not sufficiently comprehensive to secure a permanent injunction against future illegal conduct by the District or to adequately compensate A.J.T. and her Parents for their injuries and damages.

104.    Defendants have refused to implement the administrative decision and A.J.T. has not yet been provided the relief ordered.

## COUNT II

### Violations of § 504 of the Rehabilitation Act of 1973

105.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

106.    The District's violations of the IDEA also violated Plaintiffs' rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

107.    The District also violated different and independent procedural and substantive requirements of Section 504.

108.    The IDEA does not provide the exclusive remedy for violations of the educational rights of students with disabilities.

109.    The relief available and obtained from the IDEA administrative hearing is insufficient to permanently secure A.J.T.'s rights to a full school day equal to her peers or to fully compensate her or her family for their injuries that resulted from disability discrimination by the District.

110.    The District is a recipient of federal financial assistance, operates programs and activities that receive federal financial assistance, and is subject to the requirements of Section 504, 29 U.S.C. § 794 and 34 C.F.R. § 104.2.

111.    A.J.T. is a student with disabilities that substantially limit a number of major life activities, and is an otherwise qualified individual with a disability and a handicapped person under Section 504, 29 U.S.C. § 794 and 34 C.F.R. § 104.3(j).

112.    The District denied and excluded A.J.T. from full and equal participation in and the benefits of its programs, services and activities, including effective methods of making instruction and instructional materials accessible, on the basis of disability in violation of Section 504, 29 U.S.C. § 794 and 34 C.F.R. §104.4.

113.    The District's actions discriminated against A.J.T. in violation of 29 U.S.C. § 794 and 34 C.F.R. § 104.4(b) when it:

a. Denied her the opportunity to participate in or benefit from the aids, benefits of services it offers;

b. Denied her the opportunity to participate in or benefit from aids, benefits or services that are equal to that afforded to others;

c. Provided her aids, benefits, or services that are not as effective as those provided to others;

d. Unnecessarily provided her with different or separate aids, benefits or services;

e. Otherwise limited her in the enjoyment of all the rights, privileges, advantages and opportunities enjoyed by others receiving their aids, benefits and services;

f. Deprived her R.M.M. of an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement in the most integrated setting appropriate to her needs;

g. Utilized criteria or methods of administration that have the effect of subjecting her to discrimination, or have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the programs or activities; and

h. Determining the site or location of services in a manner that has the effect of excluding her, denying her the benefits of or subjecting her to discrimination under its programs or activities.

114. Defendants' failures and refusals to provide A.J.T. with educational

opportunities equal to those provided to students without disabilities constitute a longstanding, ongoing and continuous violation of Section 504 and its supporting regulations. Unless permanently enjoined from doing so, the Defendants will continue to violate Section 504.

115.   As a result of disability discrimination A.J.T. has been relegated to an inferior education program with less services, programs, activities, benefits and other opportunities, and an inferior status in the enjoyment of critical education services, resulting in educational, functional, communication, and social disadvantages in ways that diminish her current and future communication, health, independence, safety, self-esteem, relationships, dignity, productivity, satisfaction and well-being, in a direct affront to the purposes of federal special education and anti-discrimination laws.

116.   As a result of disability discrimination A.J.T. has been significantly impeded in making progress towards the goals of equal opportunity, full participation, independent living, and economic self-sufficiency, contrary to the purposes of federal special education and anti-discrimination laws.

117.   As a direct result of disability discrimination Plaintiffs A.T. and G.T. have expended private funds to provide evaluations of A.J.T.'s disabilities and needs, as well special education and related services in an amount to be established at trial that the District should be ordered to pay.

118.   As a direct result of disability discrimination A.J.T. has suffered injuries and damages in an amount to be established at trial that the District should be ordered to pay.

119.     Plaintiffs are entitled to injunctive relief, compensatory damages, costs and attorney's fees.


## COUNT III

## Violations of the Americans with Disabilities Act

120.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

121.     The District's violations of the IDEA and Section 504 also violated Plaintiffs' rights under Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*.

122.     The District also violated different and independent procedural and substantive requirements of the ADA.

123.     The IDEA does not provide the exclusive remedy for violations of the educational rights of students with disabilities.

124.     The relief available and obtained from the IDEA administrative hearing is insufficient to permanently secure A.J.T.'s rights to a full school day equal to her peers or to fully compensate her or her family for their injuries that resulted from the discrimination by the District.

125.     The District is a public entity as defined in the ADA and is subject to the requirements of the ADA, 42 U.S.C. §§ 12131 and 12132.

126.     A.J.T. is a student with a disability that substantially limits a number of major life activities, and is a qualified individual with a disability as defined by the ADA,

42 U.S.C. § 12131.

127. The District excluded A.J.T. from participation in and denied her the benefits of its services, programs or activities, and subjected her to discrimination in violation of the ADA, 42 U.S.C. § 12132.

128. The District's actions discriminated against A.J.T. in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130 when it:

    a. Denied A.J.T. the opportunity to participate in or benefit from the aid, benefit or service;

    b. Afforded A.J.T. an opportunity to participate in or benefit from the aid, benefit or service that was not equal to that afforded others;

    c. Provided A.J.T. an aid, benefit, or service that was not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

    d. Provided A.J.T. different or separate aids, benefits or services than provided to others and refused to provide modifications necessary to its standard schedule in order to provide her with aids, benefits or services as effective as those provided to others;

    e. Otherwise limited A.J.T. in the enjoyment of a right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service;

    f. Denied A.J.T. the opportunity to participate in services, programs, or activities that are not separate or different;

g. Utilized criteria or methods of administration that had the effect of subjecting A.J.T. to discrimination on the basis of disability, and had the purpose or effect of defeating or substantially impairing accomplishment of the objectives of its program with respect to individuals with disabilities;

h. Refused to make reasonable modifications to policies, practices or procedures when necessary to avoid discrimination on the basis of disability; and

i. Imposed or applied eligibility criteria that screen out or tend to screen out an individual or class or individuals with disabilities from fully and equally enjoying any service, program or activity.

129.   Defendants' failures and refusals to provide A.J.T. with educational opportunities equal to those provided to students without disabilities constitute a longstanding, ongoing and continuous violation of the ADA and its supporting regulations.  Unless permanently enjoined from doing so, the Defendants will continue to violate the ADA.

130.   As a result of disability discrimination A.J.T. has been relegated to an inferior education program with less services, programs, activities, benefits and other opportunities, and an inferior status in the enjoyment of critical education services, resulting in educational, functional, communication, and social disadvantages in ways that diminish her current and future communication, health, independence, safety, self-esteem, relationships, dignity, productivity, satisfaction and well-being, in a direct affront to the purposes of federal special education and anti-discrimination laws.

131.    As a result of disability discrimination A.J.T. has been significantly impeded in making progress towards the goals of equal opportunity, full participation, independent living, and economic self-sufficiency, contrary to the purposes of federal special education and anti-discrimination laws.

132.    As a direct result of disability discrimination Plaintiffs A.T. and G.T. have expended private funds to provide evaluations of A.J.T.'s disabilities and needs, as well special education and related services in an amount to be established at trial that the District should be ordered to pay.

133.    As a direct result of disability discrimination A.J.T. has suffered injuries and damages in an amount to be established at trial that the District should be ordered to pay.

134.    Plaintiffs are entitled to injunctive relief, compensatory damages, costs and attorney's fees.


# VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.    Declare that Defendants have discriminated against Plaintiffs on the basis of disability by excluding A.J.T. from a full school day in violation of Section 504 of the Rehabilitation Act and Title II of the ADA;

2.    Preliminarily and permanently enjoin Defendants from failing and refusing to fully implement the administrative decision to immediately provide A.J.T. a full school

day, eye gaze technology with a speech generating device, and compensatory education services;

3.      Preliminarily and permanently enjoin Defendants from attempting to shorten A.J.T.'s school day without complying with the procedures and standards required by federal special education and anti-discrimination laws;

4.      Reimburse Plaintiffs for the costs expended in providing evaluations and private services to secure her rights under federal special education and anti-discrimination laws;

5.      Award Plaintiffs compensatory damages in excess of Fifty Thousand Dollars ($50,000);

6.      Award Plaintiffs reasonable attorneys' fees and costs; and

7.      Grant such other relief as the Court deems just and appropriate.


Dated: August 3, 2021                    By: */s/ Amy J. Goetz*
                                         Amy J. Goetz (# 214711)
                                         **SCHOOL LAW CENTER, LLC**.
                                         452 Selby Avenue, Suite 2 East
                                         Saint Paul, Minnesota 55102
                                         Telephone: (651) 222-6288

                                         **ATTORNEYS FOR PLAINTIFFS**


## V E R I F I C A T I O N

We verify under penalty of perjury in accordance with the laws of the United States that we have read the foregoing Complaint and that all of the facts and statements

made therein are true and correct to the best of our knowledge, and as to those facts stated

on information and belief, we also believe them to be true and correct.


Dated: August 3, 2021                    */s/ A.T.* and *G.T.*
                                          A.T., Father and G.T., Mother