**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Osseo Area Schools, Independent School District No. 279,

Plaintiff,

v.

A.J.T., a minor child, by and through her Parents, A.T. and G.T.,

Defendants.

Court File No. 21-cv-1453 (MJD/DTS)

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONSOLIDATE AND STAY THE PROCEEDINGS**

---

A.J.T., a minor child, by and through her Parents, A.T. and G.T., individually and jointly,

Plaintiffs,

v.

Osseo Area Schools, Independent School District No. 279; and Osseo School Board,

Defendants.

Court File No. 21-cv-1760 (ECT/JFD)

---

The District seeks to consolidate its appeal of the special education administrative decision (No. 21-cv-1453) with the Parents' separate claims for disability discrimination (No. 21-cv-1760), and to hold pre-trial proceedings in limbo while its appeal is decided. There is no justification for those requests and the motions should be denied.

The District attempts again to delay resolution of the discrimination claims, arguing unconvincingly that they are no more than recasting of the special education

claims. If that were true, the proper remedy would be to bring a motion to dismiss the discrimination claims on that basis. But the District has not done so and must realize that would be fruitless.

## I. THE TWO CLAIMS AT ISSUE ARE SEPARATE AND DISTINCT

The District's theory that a decision in its appeal will dispose of the discrimination claims rests on a faulty argument that they are in fact duplicative claims. That is wrong. A decision on its special education appeal is not dispositive – and may be unrelated entirely – to a decision on the discrimination claims. After a long and harried history of misunderstanding regarding the interplay between these two laws,[1] we now recognize that disability discrimination and special education claims are separate and distinct claims, and disability discrimination claims are not eclipsed by special education claims. The Individuals with Disabilities Education Act contains an explicit preservation of disability discrimination claims in its exhaustion of administrative remedies provision that would be meaningless if those claims were duplicative. 20 U.S.C. § 1415(*l*). That provision "'reaffirmed the viability' of federal statutes like the ADA or Rehabilitation

---

[1] The U.S. Supreme Court misinterpreted the relationship between the predecessor to the IDEA and non-discrimination laws in 1984 in *Smith v. Robinson*, holding that special education law was the exclusive avenue of relief for students with disabilities to challenge the adequacy of their education, leading to Congressional correction in the Handicapped Children's Protection Act of 1986. *Fry v. Napolean Community Schs.*, 137 S.Ct. 743, 750 (2017).

Act 'as separate vehicles' no less integral than the IDEA 'for ensuring the rights of handicapped children.'"[2]

> According to that opening phrase, the IDEA does not prevent a plaintiff from asserting claims under such laws even if, as in *Smith* itself, those claims allege the denial of an appropriate education (much as an IDEA claim would).[3]

The next phrase imposes a limit on pursuit of discrimination claims by requiring first exhaustion of administrative procedures under the IDEA when seeking relief that is also available under the IDEA.[4]

The *Fry* decision unpacked further the distinction between the IDEA and federal non-discrimination protections, a case determining the extent and limits of the IDEA's exhaustion of administrative remedies requirement. The Court recognized that the IDEA is not the only federal statute protecting the interests of children with disabilities but it exists alongside Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (504).[5] While the IDEA is focused exclusively on the guarantee of "a free appropriate public education,"[6] the ADA and Section 504 require modifications to policies, practices and procedures in order to avoid discrimination.[7] The ADA and Section 504, unlike the IDEA, authorize individuals to seek redress for violations by bringing suit for injunctive relief and money damages.[8] A.J.T. and her Parents properly

[2] *Id.* at 750, citing H.R.Rep. No. 99-296, pp. 4 and 6 (1985).
[3] *Id.*
[4] *Id.*
[5] *Id.* at 749.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 750.

exhausted the IDEA's remedies and now seek supplemental relief available exclusively through the ADA and Section 504.[9] As the Court recognized, "[a] school could offer a FAPE to a child with a disability but still run afoul of the law's ban on discrimination" and regardless of whether a child is denied a FAPE, schools may not violate Title II and § 504 by discriminating against children with disabilities.[10]

*Fry* involved a claim of disability discrimination under the ADA and 504 that a public school denied equal access to the school and its programs by refusing to accommodate the use of a service animal, resulting in emotional distress and pain, embarrassment and mental anguish, seeking declaratory relief and damages. The Court reversed the Sixth Circuit's determination that the harms were generally educational and harmed her at school, requiring exhaustion of the IDEA. Because exhaustion is required only in suits where relief is available under the IDEA, and the only relief available under the IDEA is for the denial of a FAPE, the discrimination claims were not required to be exhausted.[11] In other words, the discrimination claims were separate and distinct from the special education claim. That is the same analysis here. A.J.T. and her Parents have wrung from the IDEA administrative proceedings all of the relief available through them and are now entitled to proceed, untethered to those proceedings, to be heard on their discrimination claims. "[E]ven when the suit arises directly form a school's treatment of a child with a disability – and so could be said to relate in some way to her education - . .

---

[9] *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850 (8th Cir. 2000)(IDEA relief includes compensatory education services but excludes damages).
[10] *Id.* at 751.
[11] *Id.* at 752.

. [a] school's conduct toward such a child – say, some refusal to make an accommodation – might injure her in ways unrelated to a FAPE . . . "[12] No relief for refusal to accommodate is available under the IDEA and the discrimination claims should proceed without further delay.[13]

The Eighth Circuit Court of Appeals has concluded similarly that special education and disability discrimination claims are separate and distinct, because special education claims are concerned with denials of a FAPE whereas discrimination claims are concerned with failure to provide accommodations to ensure equal access to education.[14] "The School District's alleged discrimination on the basis of his disability is a claim that is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement and free, appropriate public education (FAPE) decisions."[15] Here, the record is *unequivocal* that the repeated decisions of District administrators to shorten A.J.T.'s school day were wholly unrelated to and entirely outside of the IEP Team process.

The Joint Rule 26(f) Report filed 9/24/21 [Doc. 9] reflects the *compromise* position of the District that pretrial activities should be prolonged over the course of *more than two years to November, 2023,* before the case should be trial ready. The Court had to limit that tactic and significantly shorten the schedule so that the case could be trial

---

[12] *Id.* Id. *at 754.*
[13] *Id.*
[14] *M.P. v. Ind. Sch. Dist. 721*, 439 F.3d 865, 867-68 (2005).
[15] *Id.* at 868.

ready by *November 2022, almost half that time.* Now the District attempts a new tactic to again prolong resolution of the discrimination claims that should be thwarted.

The parties' cross-motions for judgment on the administrative record in the special education appeal are due to be filed and served by February 28, 2022, and will not be heard until at least forty-five days later, or mid-April at the soonest. A decision on the appeal is unlikely to be issued sooner than July 2022 and could be as late as the end of the 2022 calendar year. It is unreasonable and unnecessary to stop discovery on the discrimination claims for another year and resolution for another two years. It is also not justified by the governing rules or proper casting of the distinct claims at issue. Neither is the District's motion to consolidate separate and distinct claims that require different standards and proof, as well as different courses to resolution, justified. Any convenience that could be achieved by consolidation is outweighed by prolonging final resolution. School districts should not be permitted to outlast, outmaneuver, and outspend families in disability discrimination claims that are hard enough to pursue without inordinate costs and delays.

## II. CONSOLIDATION IS NOT JUSTIFIED

Consolidation of cases is authorized by Fed. R. Civ. P. 42(a) as follows:

> If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall,* 138 S.Ct. 1118, 1131 (2018). Consolidation of cases does not result in "completely merging the constituent cases into one, but instead as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them." *Id.* at 1125.

It appears the District does *not* seek to join the two cases for hearing but merely to join them for procedural purposes (primarily to delay discovery in the discrimination case) and ultimately to determine them separately. This makes sense and supports a determination that consolidation is not appropriate because each case is on a different litigation course. The special education appeal is headed for resolution on the administrative record through dispositive motions. The discrimination case is headed for resolution through discovery that is already underway, motions and ultimately a trial.

Here consolidation is not appropriate because there are no common questions of law or fact to be resolved, much less not "significant overlap in underlying facts and issues" as the District asserts,[16] and it will not avoid unnecessary cost or delay or result in more efficient case management. The risk of prejudice or confusion cuts *against* consolidation as A.J.T. and her Parents will be prejudiced by an unnecessary delay in resolution, and the already the District has sewn confusion by asserting that the two claims are virtually the same when they are not. More of that is likely with consolidation that will *not* assist the court or the parties.

---

[16] Doc. 20 at 10.

The court's discretion to consolidate is not unbounded. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994). The two proceedings *must* involve common issues of fact or law or consolidation is reversible as an abuse of discretion. *Id.* at 236. Because the legal issues were unrelated and there were no common factual disputes to be resolved, consolidation was improper. *Id.* That is the case here. The other Eighth Circuit Court of Appeals decision on consolidation also counsel against consolidation here. "Consolidation is inappropriate, however, if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *E.E.O.C. v. HBE Corp.*, 136 F.3d 543, 552 (8th Cir. 1998). And, where damages are sought for some claims that are not relevant to the other claim, consolidation is not appropriate. *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403 (8th Cir. 1990).

None of the cases relied upon by the District support consolidation of two distinct claims in two very different procedural postures without any questions of common fact or law. They are inapposite.

**A. No Common Questions of Law Exist**

The questions of law at issue in the two cases are distinct. The legal issue in the special education appeal is whether the District denied A.J.T. a free appropriate public education under the IDEA. The determination of that issue depends on an individualized assessment of her disabilities and needs and of the sufficiency of her progress under the District's limited school day. The legal issue in the discrimination case is whether the District discriminated and retaliated against A.J.T. and her Parents by treating her

unfairly due to her disability and impairing her right to participate equally in public school programs.

> In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions. That is not to deny some overlap in coverage. The same conduct might violate all three statutes – which is why, as in *Smith*, a plaintiff might seek relief for the denial of a FAPE under Title II and § 504 as well as the IDEA. But still, the statutory differences just discussed mean that a complaint brought under Title II and § 504 might instead seek relief for simple discrimination irrespective of the IDEA's FAPE obligation.[17]

A.J.T. and her Parents seek relief for simple discrimination irrespective of the IDEA's FAPE obligation and no common questions of law exist to support consolidation. The essence of the discrimination claims "is equality of access to public facilities, not adequacy of special education."[18] Without the permanent injunctive relief sought the District will again seek to shorten A.J.T.'s school day without justification, and without damages for educational harm and loss, she and her Parents will not be fully compensated.

### B. No Common Questions of Fact Exist

The District asserts that the special education and discrimination claims share a common central dispute of fact: "the length of the Student's school day."[19] There is no dispute regarding this fact in the special education case because the administrative record

[17] *Id.* at 756.
[18] *Id.*
[19] Doc. 20 at 6.

clearly establishes exactly the length of A.J.T.'s school day from her first day of school in the District to the date of hearing. Then, the hearing decision ordered a full school day until 6:00 p.m. and that is now, albeit inconsistently, provided by the District. The length of the A.J.T.'s school day is undisputed and will not be at issue in the discrimination case. The District's argument is too blunt to be useful. The fact that the special education Complaint raised discrimination claims *that were not resolved at hearing* was intended only to provide notice to the District of those claims so that the discrimination Complaint could be resolved as soon as possible. It is not a reason to confound the separate and distinct claims as the District attempts to do.

The question of what *should be* the length of A.J.T.'s school day is common to both cases, but has been conclusively established as a function of special education rights in the special education case on appeal, and will be established as a function of non-discrimination rights in the discrimination case. These two alternative claims to determine a full school day for A.J.T. are entirely separate analyses, with different elements, measures of proof, and defenses. They are not common questions of fact as that term is used to determine the propriety of consolidation.

All of the operative facts to determine the District's appeal of the special education administrative decision have been fully and decisively established in the extensive administrative record. It is undisputed that District administrators unilaterally shortened A.J.T.'s school day for almost six years unrelated to her individual needs and outside of the IEP Team process. It is undisputed that A.J.T. made progress even in a shortened school day and will benefit from a full school day (discounting the incredible

opinion of the District's expert neurologist, Dr. Shams, discounted entirely because of lack of foundation and credibility). Those facts cannot be overcome now because no contrary evidence exists in the record or can be manufactured by the District.

The facts yet to be established in the discrimination case involve the intent of District administrators, the harm caused, and the damages suffered. Those facts are not in the special education administrative record because they are unrelated to the sole issue there: whether the District denied A.J.T. a FAPE.

No common question of fact that is yet to be resolved (triable issue of fact) exists and the two cases should continue their independent courses. There is no risk of separate trials involving the same parties, witnesses or evidence because the "trial" of the special education case has been concluded in the administrative hearing system.

### C. Unnecessary Cost or Delay Will Not Be Avoided

Discovery in the discrimination case has already been commenced by A.J.T. and her Parents and responses are due January 24, 2022. Delaying discovery will likely increase costs by providing ongoing opportunities to the District to proliferate additional unnecessary motions to which responses will be required, driving up costs.

The District asserts that regardless of whether it wins or loses the special education appeal, the discrimination claim will fall away.[20] Its reasoning is undecipherable but defies common sense when the two claims are properly understood as

[20] Doc. 10 at 9.

concerning separate violations of different federal laws. Different claims can and should result in different relief and should not present a problem of inconsistency.

There is no doubt that consolidation and a stay will cause delay in reaching final resolution, *up to an additional year*, and such delay will harm only A.J.T. and her Parents who continue to await final relief while financing expensive private litigation *and* the District's litigation costs through taxpayer dollars.

## III. STAY IS NOT JUSTIFIED

Because consolidation is not appropriate or justified, there is no reason to stay the discrimination proceedings and every reason to permit it to proceed in accordance with its established schedule.

Dated: January 8, 2022

**SCHOOL LAW CENTER, LLC**

By: */s/ Amy J. Goetz*
Amy J. Goetz (# 214711)
520 5th Street South
Stillwater, Minnesota 55082
Telephone: (651) 222-6288

**ATTORNEYS FOR A.J.T., A.T., and G.T.**