# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1399
_____

A.J.T., a minor child, by and through her parents, A.T. and G.T.

*Plaintiff - Appellant*

v.

Osseo Area Schools, Independent School District No. 279; Osseo School Board

*Defendants - Appellees*

------------------------------

Council of Parent Attorneys and Advocates, Inc.

*Amicus on Behalf of Appellant(s)*

Minnesota Administrators for Special Education; Minnesota Association of School Administrators; Minnesota School Boards Association

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 18, 2023
Filed: March 21, 2024
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

This case involves the same circumstances as those described in *Osseo Area Schools, Independent School District No. 279 v. A.J.T. ex rel. A.T.*, ___ F.4th ___ (8th Cir. 2024). But here, A.J.T. sued Osseo Area Schools (the District) for disability discrimination. The district court[1] granted the District's motion for summary judgment, and we affirm.

A.J.T. has epilepsy, and her seizures are so severe in the morning that she can't go to school until noon. Her parents asked for evening instruction to give her a school day closer in length to that of her peers, but District officials denied their repeated requests. So A.J.T. sued through her parents, alleging violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). The district court granted the District's motion for summary judgment, concluding that the District could not be held liable because it did not act with bad faith or gross misjudgment.

We review a district court's grant of summary judgment *de novo*, affirming only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *B.M. ex rel. Miller v. S. Callaway R–II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). We view all facts in favor of A.J.T. and give her "the benefit of all reasonable inferences in the record." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013).

Claims under Section 504 and the ADA live and die together, as "the enforcement, remedies, and rights are the same under both." *B.M.*, 732 F.3d at 887 (citation omitted); 42 U.S.C. § 12133. Section 504 requires federal grantees to give "otherwise qualified" people with disabilities "meaningful access" to their benefits. *See Argenyi*, 703 F.3d at 448 (quoting *Alexander v. Choate,* 469 U.S. 287, 301 (1985)); 29 U.S.C. § 794(a). And Title II of the ADA requires public entities to provide meaningful access to their services, programs, or activities. *Segal v. Metro.*

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

*Council*, 29 F.4th 399, 404 (8th Cir. 2022); 42 U.S.C. § 12132. "Meaningful access" often requires "reasonable accommodations." *Choate*, 469 U.S. at 301.

That said, when the alleged ADA and Section 504 violations are "based on educational services for disabled children," a school district's simple failure to provide a reasonable accommodation is not enough to trigger liability. *B.M.*, 732 F.3d at 887 (citation omitted). Rather, a plaintiff must prove that school officials acted with "either bad faith or gross misjudgment," *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982), which requires "'something more' than mere non-compliance with the applicable federal statutes," *B.M.*, 732 F.3d at 887 (citation omitted). The district's "statutory non-compliance must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that [it] acted with wrongful intent." *Id.*

A.J.T. may have established a genuine dispute about whether the district was negligent or even deliberately indifferent, but under *Monahan*, that's just not enough. She points out that her parents repeatedly notified the District that its refusal to provide evening instruction violated Section 504 and the ADA. And she says that the District violated accepted professional standards by failing to follow its own policies and procedures requiring its staff to report, investigate, and respond to complaints of discrimination. As evidence, she notes that the District's Director of Student Services, who oversees Section 504 compliance, testified that she was unaware of the parents' complaints and did not know that the District's policies permit at-home schooling as an accommodation. But the Director's non-compliance does not amount to a deviation "so substantial[]" that it demonstrates "wrongful intent." *Id.*

True, "notice of a student's disability coupled with delay in implementing accommodations can show bad faith or gross misjudgment" under some circumstances. *Id.* at 888; *see also M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (finding genuine dispute as to bad faith or gross misjudgment where school district knew about disability-based harassment of a student, ignored the mother's repeated calls, offered patently unworkable solutions,

-3-

and reneged on its offer to cover transportation costs to a new school after the student transferred). But here, the District did not ignore A.J.T.'s needs or delay its efforts to address them, even if the efforts were inadequate. District officials met with A.J.T.'s parents and updated her individualized education program (IEP) each year. Her IEP included a variety of services, like intensive one-on-one instruction and a 15-minute extension of her school day so that she could safely leave after the halls cleared. And the District even offered 16 three-hour sessions at home each summer. Regardless of whether these actions were enough to provide meaningful access, they do not show wrongful intent.

A.J.T. has failed to identify conduct clearing *Monahan*'s bar, so we are constrained to hold that summary judgment was proper.[2] We affirm the district court's judgment.

———————————————

[2] Why do we have such a high bar for claims based on educational services when we require much less in other disability-discrimination contexts? *See, e.g.*, *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014) (no intent required for failure-to-accommodate claim); *Meagley v. City of Little Rock*, 639 F.3d 384, 388–89 (8th Cir. 2011) (deliberate indifference required for damages); *accord S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260–65 (3d Cir. 2013) (collecting cases). The answer is a lesson in why "[w]e do not . . . add provisions to . . . federal statute[s]." *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010).

In *Monahan*, we speculated that Congress intended the IDEA's predecessor to limit Section 504's protections, and without any anchor in statutory text, we added a judicial gloss on Section 504 to achieve that end. 687 F.2d at 1170–71. Congress rejected *Monahan*'s premise just a few years later. *See* Handicapped Children's Protection Act of 1986, Pub. L. No. 99–372, 100 Stat. 796; 20 U.S.C. § 1415(*l*). But nonetheless, its bad faith or gross misjudgment rule spread like wildfire. *See I.Z.M. v. Rosemount–Apple Valley–Eagan Pub. Schs.*, 863 F.3d 966, 973 n.6 (8th Cir. 2017) (collecting cases).

*Monahan* has been questioned. *See, e.g.*, *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1002 (6th Cir. 2023); Mark C. Weber, *Accidentally on Purpose: Intent in Disability Discrimination Law*, 56 B.C. L. Rev. 1417, 1455–64 (2015); *AP ex rel. Peterson v. Anoka–Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1145–46 (D. Minn. 2008); *Howell ex rel. Howell v. Waterford Pub. Schs.*, 731 F. Supp. 1314, 1318–19 (E.D. Mich. 1990). But for the time being, it remains the law of our circuit.